Good morning. My name is Debra Bookout and I represent Petitioner Appellant Robert Falconer. I'm going to plan on reserving one minute for rebuttal if that's okay. The core issue addressed in this appeal is whether counsel's deficient performance under Roe v. Flores-Ortega entitled Mr. Falconer to equitable tolling. Under EDPA 2244-D1-D, Mr. Falconer's Federal limitations period did not begin to run until he discovered the underlying predicate for his Flores-Ortega claim. It is undisputed that at the time of his sentencing hearing, Mr. Falconer advised counsel to file an appeal. It is also undisputed that counsel didn't do so. Under those undisputed facts, Mr. Falconer has made up. I'm sorry. The second undisputed fact is what? That counsel did not file the notice of appeals requested. I had thought that there was an evidentiary hearing. Yes, sir. In district court. Yes, sir. On the habeas petition. Yes. And that the district court concluded that Falconer was not credible and that his lawyer who testified that he had told Falconer you could appeal if you wanted to, but there are no issues, so I'm not going to appeal, and Falconer acknowledged that. Am I wrong about that? Wrong in the that Falconer acknowledged counsel's stated opinion or alleged stated opinion, because he contested that, as to the feasibility or the futility of the appeal. The court, the district court did find that counsel advised Mr. Falconer that he did not believe there were any issues for appeal. But I don't think that changes the undisputed facts. Mr. Falconer advised counsel to, timely advised counsel to file an appeal, and counsel didn't. There was no finding that counsel advised Mr. Falconer that he would not be filing an appeal based on his opinion that there were no appealable issues. Yes. I thought there was either ambiguity or controversy about when the lawyer told Falconer that he would not file. Right? No, there was no ambiguity as to when he told him. Well, when did he tell him? In February 2002, when he had a phone conversation with him. I think the ambiguity is. Well, you know, there was a conversation right after the sentencing, right? Yes. And the lawyer told him something at that time. The lawyer told him that he didn't believe there were any appealable issues. But he didn't say, and I'm not going to file an appeal? No. So under those undisputed facts, Mr. Falconer has made out a floor or take a claim. I don't want to beat up this, but the State court apparently asked Coffey, the lawyer, what his position was on this issue. And he wrote back and said there were no cognizable issues for appeal, given the fact that Petitioner had entered a knowing and voluntary plea to charges upon which he was sentenced, Petitioner was advised of this fact, and a notice of appeal and appeal were not filed for this reason. And then his testimony before the district court, Coffey further testified that his usual practice is to file a notice of appeal if requested, but that he did not in this particular case, which, again, the district court finds Coffey believable and Falconer not. The bottom line is that under Flores or Tega, once advised by his client that he wished to appeal, it was Mr. Coffey, the attorney's obligation to file the notice of appeal. There's no indication that his opinion was made. Well, either that or to withdraw. Right. Right. And he didn't either. There's no indication that Mr. — that the attorney's opinion, stated opinion to Mr. Falconer, which we can test, led Mr. Falconer to believe that Mr. Coffey was not going to file the notice of appeal, nor is there any indication that what Mr. Coffey was saying to Mr. Falconer was, I'm not going to file your appeal because I have this opinion that there are no appealable issues. When Mr. Falconer advised counsel to file the notice of appeal, despite counsel's opinion about the merits of that appeal, he was obligated under Flores or Tega to file the notice of appeal. There's no indication that Mr. Falconer acquiesced or understood his counsel's opinion about the appeal to mean he wouldn't file one. There is this letter that Falconer wrote, Coffey? Yes. In which he talks about what he wants done, none of which involves an appeal. I think those were issues that could have been raised on appeal, but there are also issues that could be raised in some other forum or venue. And was this letter written after Falconer became aware that an appeal had not been filed? No. This was prior to. Okay. This was before he entered. It was about two months after he went into prison and before he entered the structured living program. All right. All right. So let's start at this point now. Falconer wanted to appeal. He told his lawyer he wanted to appeal. The lawyer did not file a notice of appeal. Let's assume that's true, okay? And then so what does that mean for this case? What that means for this case is that's when Mr. Falconer's Federal limitations period began to run. What does that mean? What's the legal consequence? That counsel was ineffective and Mr. Falconer was denied his appeal. So it's an ineffective assistance claim? Yes. And did the district court make a finding on that? No. Because why not? I'm not sure. It was raised. He never reached that issue. He found that counsel's opinion about the merits of the appeal put Mr. Falconer on notice that an appeal might not be filed. So his finding was that Mr. Inevitable. So what is that? Is that equivalent to a finding of no ineffective assistance? I don't think so. I think it's a finding that Mr. Falconer wasn't diligent, which is a little difficult to comport with the rest of the decision, because the district court also found that the underlying predicate for the claim was discovered on that day, March 6, 2001, when. Well, let me ask the question a little bit differently. What error do you contend that the district court made in, what, dismissing the petition, right? I think that the district court drew the wrong legal conclusions from the facts that it found. I think that notwithstanding the district court's opinion that Mr. Falconer was advised of the merits of the appeal did not alter counsel's obligation to file it. So even assuming the district court were correct that counsel made these statements to Mr. Falconer, it doesn't change counsel's obligation and Mr. Falconer's discovery of his Flores-Ortega claim. When did he discover that an appeal had not been filed? In February 2002, in a phone conversation with counsel, wherein he asked, inquired about the status of the appeal at that time. So it was clear that up to that time he believed an appeal was pending. But then he didn't file his habeas, federal habeas petition for several more years. Well, not several more years. It was, I think, a little over a year and a half later. He did file a State petition. Yes, he did, but that doesn't toll. No, but he couldn't have known that at the time. And I think he was in a position where he really had no choice. He had no unexhausted issues or no exhausted issues at that time. He had nothing presented to the State court that he could have presented in a Federal petition at that time. He had a matter of weeks, possibly days, depending on exactly when this conversation took place, to file a State petition. Right. He filed his petition, unfortunately, about two and a half months after his State petition time had run. But at the time he did have a period of time in which he could have filed a timely State petition. He had about what would amount to about maybe two weeks. Right. So why should we excuse that period? I realize as a practical matter we've got a pro se person in prison, but we've, I think, in many, many other cases, we've not excused the failure to file. I think that it wasn't unreasonable for Mr. Falconer to take a couple of weeks to prepare his State petition. The fact of the matter is if it hadn't been for counsel's deficient performance in failing to file the appeal, Mr. Falconer could have filed a timely State petition. His State petition time was ticking while he was awaiting the resolution of the appeal he believed was pending. He had no cause or reason to take further action because he believed his appeal was pending. And I think that then he's not entitled to statutory tolling, but because of counsel's deficient performance he should be entitled to equitable tolling during the period of his State postconviction proceedings. But what do we do with the fact that the State did not consider it, the State statute of limitations tolled during the period in which counsel is ineffective? Isn't that binding us? Well, I think that it wasn't entirely, it was not as artfully pled in his State petition as it could have been. And the Nevada Supreme Court's finding didn't address on all fours the issue that counsel was ineffective in filing his appeal. Right. But in a sense, though, what we have in front of us is a finding, a holding by the Nevada Supreme Court that the State petition was untimely filed and not tolled. So how can we say now that they were unreasonable in making that determination as a matter of State law? I don't know if you need to. I think for the Federal limitations period, this Court can find that because of counsel's deficient performance, he would be entitled to equitable tolling, notwithstanding the Nevada Supreme Court's decision about the untimeliness of his State petition. Well, except that only gets you so far. That gets you right up to the period of time. We've got several weeks we could file a State, a timely State petition, and he didn't do that. So since an untimely State petition doesn't toll Federal statute of running, doesn't that, I think that has some consequences for your case. It doesn't toll it statutorily. Right. He's still entitled to equitable tolling during that period. Which in this case, it says he's entitled to equitable tolling for that period of time when he could have filed the State petition. Are you talking about, is he entitled to equitable tolling? Post, was it in February? February. Yeah. He said it was unreasonable, but that doesn't mean so. No, I don't think it was unreasonable. I mean, he had, if he learned. Right. But what case says that we toll that period? Toll the period between the February conversation and the filing of the. Yeah. Well, I think it would be, again, counsel's deficient performance is an extraordinary circumstance beyond Mr. Falconer's control. And then he did, I believe, everything he could to gather the documents and prepare his petition as timely as he possibly could. I'm out of time. Our questions took you a little over your time. We'll allow you a little bit for rebuttal. Thank you, Justice. Thank you for your argument. We'll hear from the State at this time. Good morning. My name is Tom Gover. I'm from the Nevada Attorney General's Office. I'm representing the appellees in this case. Just off the bat, I would like to note that in the appellant's pleadings, she's already conceded that 286 some-odd days have run on the statute of limitations here. And so we're really looking at a question that might be resolved. We have two disputes here. When does the statute of limitations commence to run? April 15th of 2001, as the U.S. District Court judge found, or in February of 2002, when it's alleged that that's the first time that Mr. Falconer found out about it. So that's the first dispute. And it involves about 292 days. And then the second question is the equitable tolling question, whether or not they're entitled to any equitable tolling upon the filing of an untimely state court petition. And so you being members of an Article III court, depending on which issue, one issue could actually make the other issue move. As the first issue as to when the statute of limitations should have run from the alleged failure of the defense counsel to file a notice of appeal, I'm pretty much prepared to go ahead and submit that on my pleadings. I believe that 28 U.S.C. 2244d1a controls in this situation. Once the time to file that appeal had expired, the clock started running. That is what the district, U.S. District Court judge found. I believe that those find that conclusion of law was based on sound findings of fact. I don't see. Kennedy. But when you say sound findings of fact, what's the finding? That the petitioner was informed that no notice of appeal would be filed? The finding of fact was a credibility determination by the U.S. District Court, that when they had their conference in the courtroom on March 6th of 2001, that counsel and Mr. Falconer got together, some conversation went on about, you know, what do you want to do? Falconer's position was, I want to appeal, and my counsel said, okay. The U.S. District Court specifically found that that was an incredible statement, that he didn't believe Falconer in there, and he believed Mr. Falconer. But the lawyer never said he told Falconer, I'm not going to file a notice of appeal. And I believe that's correct. So what's the finding? What's it based on? Well, and I think there is some evidence of that. There wasn't. Evidence of what? That defense counsel communicated to Falconer that he wasn't going to file the appeal. What is that? And the U.S. District Court. What is that, some evidence? One piece of evidence was the letter that Mr. Falconer wrote to Coffey on May 22nd of 2001, where he was – where he handwrote a letter to Mr. Coffey saying, apparently, you're still my lawyer. He cited some 8th Judicial District Court rule, and he said, because of that, I want you to file a motion, and he laid out what grounds he wanted filed in this motion. Nowhere in that letter was there any inquiry about – and by the way, the last time we talked at – at, you know, sentencing, he told me that there was no issues to appeal. You know, what did you file? Or, I mean, there was no question about that at all. And I would – and I think that the U.S. District Court correctly inferred from that letter that, at least as of May 22nd of 2001, Mr. Falconer knew that his counsel wasn't going to file an appeal for him. And so I think that's one piece of evidence. Another piece of evidence that I think is pretty compelling that, you know, I really failed to point out and the U.S. District Court failed to point out is that the time that Falconer filed his petition for writ of habeas corpus, his untimely one with the State court, he had to explain why his petition was untimely. And if you look at page 19 of that, it's Exergo Record 97, he explained the reason for his untimely filing of his court appeal was not because he thought his attorney had filed a direct appeal for him and he had been waiting around for that. He blamed the structured living program. Kennedy. 97 what? He says what? EOR 97. If you look in the first paragraph, and if you turn over to 96, page 19, it says, you know, is this petition filed one year late? What question is that? Question number 19. Number 19? Right.  Go ahead. It says he attached page 6-A. Right. But if you look at 19, it says, are you filing this petition for more than one year filing of the judgment of conviction? And if so, briefly state the reasons for the delay. And so he attaches page 6-A. On 97, what is his response? The petitioner is submitting this petition two and a half months late. He knows it's late. So the idea that maybe the statute went by and he didn't know, he knows it's late. And he blames it on the structured living program. On his arrival to the High Desert State Program, he took the initiative to enter a program to better himself, and it goes on. He talks about the isolation of the program and access to the law library. Also, I would note that the U.S. District Court found that these specifically were not exceptional circumstances for equitable tolling, that, in fact, during this five-month voluntary period of the structured living program, that he did, in fact, have access to the courts. But the ---- What do you make of the answer to number 14, if I'm looking at the same petition? Number 14, we're looking at page 93. If you did not appeal, briefly explain why you did not. Well, he's talking about he did. He did raise a claim of ineffective assistance of counsel for failing to file the appeal. That's ground number 3. Right. That's a claim. That's not the reason for not bringing your appeal. If he knew he ---- He knew about that. They can't operate as both? They can't operate as both, but they ---- he didn't state that. Now, proper Petitioner, it's not artfully pled. This guy is using words like cognizable in here to explain, yeah, I cannot present it in a cognizable matter. I mean, this isn't a petition that's hand-scrawled on, you know, some carbon-copied paper. He ---- the point that I was trying to make is that he did not attribute his untimely filing to the fact that he was waiting around for his counsel to file a direct appeal. His claim in this petition is ineffective assistance of counsel because he didn't file. But that's different from saying I was prejudiced because I didn't know he wasn't going to file, and so I waited around a long time. Well, I think he's explaining why, in the supporting facts, why he couldn't contact his counsel to ascertain that, it seems to me. But obviously, if he didn't file the appeal, I don't see how that supports the conclusion that he didn't tell his attorney to file the appeal. I mean, that's where you started this. Right. You started saying this shows that he never claimed that his attorney ---- he instructed his attorney to file the appeal. And he says the attorney didn't file the appeal. Right. And I don't think it conclusively proves that point.  But actually, as you get back to the first conversation, there doesn't seem to be much dispute about the fact, in fact, there's no dispute, that Falconer requested his attorney to file an appeal, right? That's undisputed. Well, that they inquired, I don't think there was any finding that said file an appeal. It was like, well, what do you want to do? You know, I want to file an appeal. What type of an appeal? I mean, at that point in time, you know, Falconer had just made a record that would have shot any appeal to heck. I mean, if you would look at the canvas that was made, you know, he told the judge, I want to withdraw my appeal. No, but there's absolutely nothing in the findings of the district court or in the record that suggests that Falconer didn't say, I want to appeal, or words to that equivalent. No. He told his attorney he wanted to appeal. It's also undisputed. His attorney, on this record, didn't say, didn't tell him that he wasn't going to file an appeal. He says, I told him there were no grounds for appeal. Right. So if we take those two facts, why does that lead to the conclusion that he should have been on notice that his attorney would not file the appeal? I mean, his attorney is telling him there are no grounds for appeal, I suspect if you've been in private practice, I don't know if you have, plenty of times when you give advice that the client says, no, I want to pursue it anyway. Right. Well, and I think the letter that Falconer wrote to Coffey two months after sentencing, asking for him to file a motion on his behalf, you know, I think that helps us out on that point a little bit. Well, he's asking for a motion for clarification of sentence. He wants to file that in the district court. Right. You know, essentially a 60B motion, I guess. But you can also construe that letter as a request for an additional remedy, right? It's not, you know, either an appeal or the motion. You can do both, can't you? Well, he probably wouldn't understand that, but if it had gone up. That's exactly it. That's exactly it. He's a pro se, pro per. He doesn't understand that. I mean, how can you infer from the fact that he, you know, some jailhouse lawyer told him, look, you should file this motion, from that he knew that there was no appeal pending. Right. How do you infer that? It's a long stretch. From the fact that, well, from the fact that Coffey had told the district court judge what his ordinary practice was. You know, and the State District Court judge, I feel, believes that, you know, hey, I think Coffey was credible. He's not going to say every specific case he remembers, but his ordinary practice was this. If the person would have demanded an appeal, he would have filed the appeal. Right. No, I understand that. And I think there's not much doubt that he didn't under, I mean, I think the district court's finding is supported that he didn't agree to undertake the appeal. But why does that change anything? I mean, I think at that point, if your client says, I have a duty, I want you to appeal. And you say, you don't have any grounds for appeal. You have to either appeal or withdraw. And he didn't. Well, isn't that the ineffective assistance that we have right here? Because if he'd done either of those, then certainly Faulkner would have been on notice. But he didn't say no. Right. Well, and the ineffective assistance of counsel isn't necessarily the reason why this Federal petition is filed untimely. I mean, just because you have this ineffective assistance of counsel, you don't have a free file your Federal petition any time you want card. This impediment dissolved or was gone February of 2002. Right. That's a separate argument. Yeah. I understand. Okay. And so after that, I mean, unless there's any equitable tolling for the fact that he untimely filed his petition, you already have 282 days that it ran. It's going to be untimely. There is no reason for the untimely filing, basically. Okay. Thank you. Thank you for your argument. Do you have anything else for us? Just briefly. The bottom line is that counsel was deficient in failing to file a notice of appeal as requested. And the result of that deficient performance had a domino effect on the rest of what Faulkner did following that. He was justified in believing that his client, his attorney, had filed the notice of appeal. Therefore, he was justified in awaiting the resolution of that appeal before taking any further action. Unfortunately, he had a very limited amount of time to take state action or further action after he learned of counsel's deficient performance. I think he reasonably filed his state petition within a reasonable time. Unfortunately, it did not toll the federal limitations period from running, but he couldn't have known that. And it was only but for counsel's deficient performance that that happened. And additionally, he had no reason to file a federal petition, and he had no exhausted claims. So the fact is that counsel's deficient performance affected everything Mr. Faulkner did after that, and he should be entitled to equitable tolling on this federal limitations time. Okay. Thank both counsel for their argument. The case just argued will be submitted for discussion.
judges: Hawkins, Tashima, Thomas